IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-00959-CNS

J.R.,

    Plaintiff,

v.

KILO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

This matter is before the Court for judicial review of the final decision by the Social Security Administration Commissioner ("the Commissioner") denying J.R.'s[1] application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XIV of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court REVERSES the Commissioner's denial of benefits and REMANDS for further analysis.

## I. BACKGROUND

The issues on appeal are limited to J.R.'s mental health conditions, so the background discussion will be correspondingly limited. J.R. was 48 years old at the alleged onset date of disability of June 1, 2018 (Administrative Record ("A.R.") at 17, 305). J.R. lives with several

---

[1] Pursuant to D.C.COLO.L.APR 5.2(b), Plaintiff J.R. is identified by his initials only.

1

serious mental impairments including anxiety disorder, depressive/bipolar disorder, posttraumatic stress disorder ("PTSD"), and attention deficit hyperactivity disorder ("ADHD") (*see, e.g.*, A.R. at 20).

The record evidence regarding J.R.'s mental health begins in 2017, although it indicates prior treatment (A.R. at 465). During an appointment where he sought to continue ongoing treatment in September 2017, J.R. reported concerns about his motivation, memory, an increase in ADHD symptoms, and sleep difficulties to Rebecca Benzel, LPC (*id.*). He also reported lessened PTSD symptoms (*id.*). J.R. was diagnosed with major depressive disorder and PTSD (A.R. at 468). In March 2018, J.R. reported concerns with depression, trouble sleeping, reduced energy, suicidal thoughts, and intrusive disturbing memories to LPC Benzel (A.R. at 476). Her examination showed J.R. had psychomotor agitation, was anxious, had loose associations, and was distractable (A.R. at 479).

On May 15, 2018, J.R. established care with Melanie Hanley, PA-C (A.R. at 969). With respect to J.R.'s mental health, her examination showed that J.R. was "anxious, not making eye contact," and that his reflexes were abnormal because he was unable to relax (A.R. at 971). On May 21, 2018, J.R. was seen by Amie Hart, PA-C (A.R. at 524). J.R. reported that he had stopped his psychiatric medications for two months but had restarted them (*id.*). PA Hart noted his mood/affect were irritable and guarded and diagnosed him with bipolar disorder with psychotic features, PTSD, and ADHD (A.R. at 525). On August 9, 2018, J.R. reported to PA Hart that he had restarted his medications two weeks prior and "feels better since restarting his meds" (A.R. at 529). Nonetheless, her examination found bizarre social interaction and possible paranoia (A.R. at 530). On August 10, 2018, J.R. saw PA Hanley, who noted that his mood was "euthymic to

anxious, intense" and that his affect was "abnormal – flat, guarded," mentioning that he held eye contact for longer than necessary (A.R. at 945). At a follow-on visit on August 17, 2018, PA Hanley's examination found J.R.'s mood "dysthymic, anxious," and his affect "abnormal, flat" (A.R. 932). A September 18, 2018, examination by PA Hart found J.R. with an anxious affect and that he required redirection (A.R. at 535). A November 13, 2018, examination by LPC Benzel showed psychomotor slowing and that J.R. was distractable with a depressed mood/affect (A.R. at 489–90).

Five appointments with PA Hart in 2019 had normal examination findings and involved adjusting medications (A.R. at 539–40, 544–45, 549, 554, 560). LPC Benzel saw J.R. thirteen times for therapy in 2019 and 2020. The reports of these visits are generally presented in a narrative form. In a June 19, 2019, mental status examination, she found psychomotor slowing, an expanded range of mood/affect, loose associations, and distractable concentration (A.R. at 500–01). Her January 24, 2020, assessment update had similar findings, with the additional findings of depressed anhedonic mood and a disoriented orientation (A.R. at 509–10). On July 24, 2020, J.R. indicated he discontinued his medications to PA Hart and reported sleeplessness, rages, and panic attacks to PA Hart (A.R. at 1489).[2] On August 20, 2020, J.R. was discharged from therapy by LPC Benzel to "return to therapy when wanting to participate" (A.R. at 1479). On January 26, 2021, J.R. saw PA Hanley for a primary care visit. He stated that "he has been very depressed, and this is why he has not been seen in the last year" (A.R. at 1059). She found J.R. had poor insight, an abnormal affect, and presented as "quite intense" (A.R. at 1060).

---

[2] They had another visit on August 24, 2020 (A.R. at 742).

3

Two non-examining State agency review psychologists completed evaluations of J.R. based on his medical records. On October 6, 2020, Cathy Word-Allen, Ph.D., completed a mental residual functional capacity assessment and opined J.R. is "[m]oderately limited" in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" (A.R. at 119). She explained that J.R.'s ADHD diagnosis and symptoms of depression "may interfere [with] daily functioning, persistence, and pace in the workplace" (*id.*). She also opined J.R. has the "mental ability to do work involving some skills but not involving more complex duties" (A.R. at 120). On March 30, 2022, Lisa Renner, M.D., opined J.R. has a moderate limitation in concentration, persistence, and pace (A.R. at 1535). She opined J.R. is "able to persist at tasks that can be learned in one to three months on the job" (A.R. at 1544).

On January 15, 2020, J.R. applied for DIB and SSI (*see* A.R. at 17, 282–97). He was initially denied benefits on October 7, 2020 (A.R. at 17). J.R. requested reconsideration of his application, which the Social Security Administration denied on June 25, 2021 (*id*). J.R. then requested a hearing before an Administrative Law Judge ("ALJ"); the ALJ held a telephonic hearing regarding J.R.'s claim on April 4, 2022 (A.R. at 17). On October 5, 2022, the ALJ issued a written order denying J.R.'s applications (A.R. at 17–36), finding, at each step of the required five-step analysis, that:

1. At all relevant times, J.R. had not engaged in any substantial gainful activity (A.R. at 20).

2. J.R. suffered from the medically determinable, severe impairments of "degenerative disc disease, obesity, diabetes mellitus, asthma, supraventricular tachycardia, gastroesophageal reflux disease (GERD), obstructive sleep apnea (OSA), polyneuropathy, recurrent syncope, posttraumatic and degenerative changes to the right ankle, gout, anxiety disorder, depressive/bipolar disorder," PTSD, and ADHD (A.R. at 20). J.R. also suffered from the

4

      medically determinable impairments of umbilical hernia and malignant neoplasm of the thyroid, both of which were non-severe (*id.*).

3. J.R. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("the Listings") (A.R. at 20–24).

4. J.R. was unable to perform any past relevant work as a sign maker/installer due to his impairments (A.R. at 32).

5. Given his impairments, J.R. had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for various physical limitations (A.R. at 23). For mental limitations, J.R. was "limited to understanding, remembering, and concentrating necessary to carry out simple, routine tasks" with "occasional work interactions with the public" (*id.*).

J.R. requested review of the ALJ's decision, which the Social Security Appeals Council denied on March 10, 2023 (A.R. at 1–6). J.R. then timely sought review in this Court (*see* ECF No. 1).

## II.  LEGAL STANDARD AND STANDARD OF REVIEW

A claimant is disabled for purposes of the Social Security Act if his physical and/or mental impairments are so severe as to preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." *See* 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987); *see* 42 U.S.C. § 423(d)(2)(C). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. Rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); *see also* 20 C.F.R. § 416.905(a).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

(1) The ALJ must first ascertain whether the claimant is engaged in "substantial gainful activity." A claimant who is working is not disabled regardless of any medical findings.

(2) The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

(3) The ALJ must then determine if the impairment meets or equals in severity certain impairments described in the Listings.

(4) If the claimant's impairment does not meet or equal a Listing, the ALJ must determine whether the claimant can perform his past work despite any limitations.

(5) If the claimant does not have the "residual functional capacity" to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the national economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See Moore v. Astrue*, No. 11-cv-03318-REB, 2013 WL 1222094, at *2 (D. Colo. Mar. 25, 2013) (citing 20 C.F.R. § 404.1520(b)–(f)); *accord Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Moore*, 2013 WL 1222094, at *2. The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.*

A district court's review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See, e.g.*, *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir.

2007). "Substantial evidence" is evidence that a reasonable mind would accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance of the evidence. *Moore*, 2013 WL 1222094, at *2 (citations omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Id.* (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). In determining whether substantial evidence supports the disability decision, a district court will "meticulously examine the record as a whole," but it will "not reweigh the evidence or retry the case," nor will it substitute its discretion for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Separately, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. ANALYSIS

J.R. alleges a single point of error: that the ALJ erred in her RFC determination because she failed to properly account for J.R.'s limitations in concentration, persistence, and pace (ECF No. 12 at 3). The Court agrees.

The ALJ found J.R. had moderate limitations in concentration, persistence, and pace early in her discussion, but she did not account for those limitations in formulating the RFC. At step three of the sequential evaluation process, the ALJ must determine if any of the claimant's impairments or a combination of impairments meets or medically equals the Listings. 20 C.F.R. § 404.1520(a)(4)(iii). In discussing whether J.R. met the paragraph B criteria for mental impairments, the ALJ found that J.R. had a moderate limitation regarding concentration, persistence, and pace, noting that his status examinations "reference some intermittent distractibility" but also "more frequently document normal attention span" (A.R. at 22). The ALJ's

findings were insufficient to meet any of the Listings' criteria, so the analysis continued to the next steps (A.R. at 20).

In formulating the RFC, the ALJ found the same moderate limitations in concentration, persistence, and pace. ALJ noted that it was "clear that the claimant has a well-established history of mental impairments with persistent depression, anxiety, trauma, and attention related symptoms" (A.R. at 26). Although the ALJ noted that J.R. "demonstrated limited engagement in therapy and has consistently been noncompliant with medication despite his repeated acknowledgment that he experienced significant symptom relief from medication," she nonetheless found that J.R.'s "symptoms show[] the claimant does have moderate limitations in the areas of understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace" (A.R. at 26–27).

In the same section, that ALJ also discussed these limitations in relation to the two non-examining State agency review psychologists' opinions. The ALJ found the medical opinions of Drs. Word-Allen and Renner partially persuasive (A.R. at 31). The ALJ noted that "both supported their medical opinions with detailed explanations that referenced objective medical findings" but found that the "evidence of record supports greater functional limitations than those described by the mental health professionals" (*id*.). The ALJ noted that both "providers found the claimant has moderate limitations in concentrating, persisting, or maintaining pace" and that these findings were "consistent with the variable concentration seen in the mental status examinations" (*id*.) However, the ALJ found that "claimant's alleged memory problems, mood variability, reports of anger outbursts, and the other symptoms previously discussed are more consistent with moderate limitations in understanding, remembering, or applying information and interacting with others"

8

(A.R. at 32). The ALJ did not explain this shift from her prior findings of moderate limitation regarding concentration, persistence, and pace; similarly, the ALJ did not explain her conclusion that J.R.'s symptoms were "more consistent" with different limitations, nor how these different limitations were "greater functional limitations" (*id*.).

The Commissioner argues that the other limitations in the RFC account for any limitations J.R. has in concentration, persistence, and pace in work-related activities. The Commissioner notes that the ALJ limited J.R. to work where he would "'carry out simple, routine tasks,' i.e., unskilled work" and that a "limitation to unskilled work can account for a moderate limitation in maintaining concentration, persistence, or pace" (ECF No. 13 at 8–9 (quoting A.R. at 23)). In so arguing, the Commissioner analogizes this case to *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015), where the Tenth Circuit affirmed a denial of benefits. There, as here, the claimant contended that the "ALJ should have included in his RFC his specific concentration, persistence and pace limitations, rather than account for those limitations by restricting his RFC to unskilled . . . work." *Id*. at 1203. At step two, the ALJ found that the claimant had a moderate—not marked—limitation of concentration, persistence and pace." *Id*. That is where the similarities end. In *Vigil*, the ALJ specifically found that the claimant's limitations in concentration were such that he could not be expected to perform complex tasks but that the claimant retained sufficient ability perform simple tasks. *Id*. at 1203–04. The *Vigil* court cautioned that there "may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Id*. at 1204 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir.2012), for the proposition that "restrictions to unskilled jobs do not in all instances account for the effects of mental

9

impairments"). The Tenth Circuit, however, concluded that the limitation to unskilled work was sufficient for that claimant's specific limitations based on the evidence in the record. *Id*.

The circumstances here contrast with those in *Vigil*. J.R.'s medical records are replete with references to him being unable to concentrate and persist in various activities, including being easily distractable and requiring redirection (e.g., A.R. at 465, 479, 489–90, 501, 510, 971). These references are not limited to a particular time period or context, such as the performance of complex tasks discussed in *Vigil*. Likewise, there is no finding from the ALJ that J.R.'s limitations are specific to a certain kind of task. Instead, the ALJ noted that both Drs. Word-Allen and Renner indicated that J.R. was moderately limited in his ability to sustain concentration, persistence, and pace but found that the evidence supported even "greater functional limitations" (A.R. at 31). Notwithstanding this statement, the ALJ also found moderate limitations in concentration, persistence, and pace and stated, without further explanation, that her RFC finding "fully addressed" these and J.R.'s other mental health limitations (A.R. at 27). Notwithstanding the ALJ's detailed RFC discussion, it is unclear how the ALJ reached this conclusion. *See Alcantar v. Colvin*, 207 F. Supp. 3d 1206, 1212 (D. Colo. 2016) (reversing and remanding where the ALJ "purported to adopt a medical source's opinion while simultaneously failing to explain why potentially significant limitations contained in that opinion were not adopted.").

The Commissioner's other arguments on appeal likewise do not find support in the record. The Commissioner suggests that the limitation to unskilled work was included to account for J.R.'s limitations in concentration, persistence, and pace (ECF No. 13 at 8), but there is no such link in the ALJ's decision. *See also Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (reversing and remanding where the ALJ failed to include moderate difficulties maintaining

concentration, persistence, or pace in hypotheticals to the vocational expert). [3] The Commissioner similarly suggests that the ALJ "already considered and rejected" evidence that J.R. sometimes "presented abnormally on examination" and instead credited the evidence of J.R.'s "often normal findings on mental status examination, good relief of his symptoms when taking medication as directed, and his ability to do some daily activities" (*id*. at 9). But the record is to the contrary. The ALJ credited evidence that, even with treatment and despite normal findings, "there [were] recurrent findings of mood variability, distractibility, intense presentation, and abnormal eye contact" that supported a finding of limitation (A.R. at 27). The ALJ unambiguously found well-supported moderate limitations in concentration, persistence, and pace, stated that greater functional limitations were warranted, but did not explain how those limitations were accounted for in the RFC. This is error warranting remand, despite the obvious care taken by the ALJ in all other respects. *Alcantar*, 207 F. Supp. 3d at 1213.

Remand is warranted because the error is not harmless. As the Tenth Circuit has stated, "a moderate impairment is not the same as no impairment at all." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Even moderate impairments must be accounted for if they impact the claimant's ability to perform basic work activities. *Id*.; *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) ("moderate limitations must be accounted for in an RFC finding and, consequently, in a dispositive hypothetical to a VE"). The ALJ accepted medical evidence indicating impairment and indicated that even greater restrictions were warranted (A.R. at 31). The ALJ did not include these limitations in the RFC or her hypotheticals to the vocational expert (A.R.

---

[3] The Commissioner separately argues that there is no requirement that Listing findings be accounted for in a later step (ECF No. 13 at 9). This argument is misplaced here, as the ALJ repeated its finding that J.R. had moderate limitations in concentration, persistence, and pace in formulating the RFC (A.R. at 27).

11

at 58–64). *Wiederholt*, 121 F. App'x at 839 (remanding where hypotheticals did not include all limitations found). These limitations may be dispositive on their own or in combination with J.R.'s extensive limitations from his other mental and physical limitations (*e,g*, A.R. at 61 (vocational expert testimony that "if a person is off task for 15 percent or more, that really takes them out of the competitive workforce.")).

In sum, the ALJ's failure to include J.R.'s moderate limitations in maintaining concentration, persistence and pace, or explain how these limitations are accounted for in the RFC, was error requiring reversal of the disability decision.

## IV.  CONCLUSION

Based on the foregoing analysis, the Court ORDERS as follows:

1. The conclusion of the Commissioner (through the ALJ) that J.R. was not disabled is REVERSED; and

2. The case is REMANDED to the ALJ, who is directed to:

    a. Further develop the record as she deems necessary by recontacting any treating, examining, or reviewing sources for further clarification of their findings, seeking the testimony of additional medical or vocational experts, ordering additional consultative or other examinations;

    b. Reevaluate the extent of J.R.'s limitations in maintaining concentration, persistence and pace and how it impacts his RFC;

    c. Reevaluate her determinations at the fourth and fifth steps of the sequential evaluation process in light of her conclusions regarding the limitations caused by J.R.'s impairments signally and in combination; and

    d. Reassess the disability determination, considering the Court's directions.

DATED this 13th of December 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

13